IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

GLOBE LIFE AND ACCIDENT )
INSURANCE COMPANY, )
 )
    Interpleader Plaintiff, )
 )
v. )  CASE NO. CV419-158
 )
PHILLIP CHISHOLM and CHESTER )
JENKINS, )
 )
    Defendants. )
 )

# O R D E R

Before the Court is Defendant Phillip Chisholm's Motion for Summary Judgment. (Doc. 31.) Defendant Chester Jenkins has not opposed Defendant Chisholm's motion.[1] For the following reasons, Defendant Chisholm's motion (Doc. 31) is **GRANTED**.

---

[1] "Failure to respond [to a motion] within the applicable time period shall indicate that there is no opposition to a motion." S.D. Ga. L.R. 7.5. The Court notes that Defendant Jenkins has participated in pre-trial proceedings in this case. (See Docs. 26, 30.) However, Defendant Jenkins has failed to respond to Globe Life and Accident Insurance Company's Complaint or Amended Complaint and likewise failed to respond to Defendant Chisholm's motion for summary judgment.

## BACKGROUND[2]

On February 14, 2014, Globe Life and Accident Insurance Company ("Globe Life") issued a life insurance policy ("the Policy") to Saundra Thomas ("Ms. Thomas") in the amount of $30,000.00 ("the Benefit").[3] (Doc. 31, Attach. 1 at ¶ 1.) Ms. Thomas named Defendant Chisholm as the beneficiary of the Policy. (Id. at ¶¶ 1-2.)

In March of 2017, Ms. Thomas and Defendant Chisholm were in a romantic relationship (Doc. 31, Attach. 2 at 12) and lived together in Savannah, Georgia (Doc. 31, Attach. 1 at ¶ 3). On March 4, 2017, James Green, a friend, picked Defendant Chisholm up at his home, and they travelled to Glennville, Georgia, where Defendant Chisholm spent the night at the home of Robbie Johnson. (Doc. 31, Attach. 1 at ¶¶ 4-5, 7; Doc. 31, Attach. 2 at 13.) At the time of Defendant Chisholm and Mr. Green's departure on March 4, 2017, Ms. Thomas was alive. (Doc. 31, Attach. 1 at ¶ 6.) Mr. Green drove Defendant Chisholm back to Savannah on March 5, 2017.

---

[2] The relevant facts are taken principally from Defendant Chisholm's Statement of Material Facts (Doc. 31, Attach. 1), to which Defendant Jenkins filed no response. Although for purposes of a motion for summary judgment all inferences are drawn in the light most favorable to the nonmoving party, see Hamilton v. Southland Christian Sch., Inc., 680 F.3d 1316, 1318 (11th Cir. 2012) (quoting Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011)), all material facts not controverted by specific citation to the record are deemed admitted unless otherwise inappropriate. Fed. R. Civ. P. 56(e); S.D. Ga. L.R. 56.1.

[3] The Policy is identified as Certificate Number 00-6E17850. (Doc. 31, Attach. 2 at 6.)

(Id. at ¶ 8.) When Defendant Chisholm arrived home, he found Ms. Thomas unresponsive and called 9-1-1. (Id. at ¶¶ 9-11.) Ms. Thomas was declared deceased on March 5, 2017. (Id. at ¶ 13.) Ms. Thomas's death certificate identifies her cause of death as "multiple gunshot wounds." (Doc. 11, Attach. 2 at 2.) The Savannah-Chatham Metropolitan Police Department ("SCMPD") classified Ms. Thomas's death a homicide. (Doc. 11, Attach. 5 at 2.) As of July 6, 2021, Defendant Chisholm had not been arrested, charged, or convicted of any crimes related to the death of Ms. Thomas. (Doc. 31, Attach. 1 at ¶ 15.)

The following information, while not undisputed, provides useful context for this case. After Ms. Thomas's death, the Benefit became payable. (Doc. 11 at ¶ 11.) On March 29, 2017, Detective Corporal Zachary Burdette sent Globe Life an e-mail stating that Defendant Chisholm was a person of interest in the investigation of Ms. Thomas's murder. (Doc. 11, Attach. 4 at 2.) On May 3, 2017, Detective Burdette, in response to a request from Globe Life for additional information about Ms. Thomas's death, again stated that "[a]t this time Phillip Chisholm is being looked into as a suspect[t]." (Doc. 11, Attach. 6 at 3.) On June 23, 2017, Detective Burdette, in another e-mail to Globe Life, stated that "Phillip Chisholm is [the] number 1 suspect in the death of Saundra Thomas." (Doc. 11, Attach. 7 at 2.) Between July 2017 and November 27, 2017, Detective Burdette sent three more e-mails to Globe Life stating

3

that Defendant Chisholm remained a person of interest or a suspect in the investigation of Ms. Thomas's death.[4] (Doc. 11, Attach. 8 at 2-4.) As of the date of this Order, the Court has received no further information regarding the status of the investigation into Ms. Thomas's death.

On July 3, 2019, Globe Life filed its Complaint for Interpleader pursuant to 28 U.S.C. § 1335 (Doc. 1), which it amended on September 13, 2019, seeking to resolve potential competing claims to the proceeds of the Policy (Doc. 11). Specifically, Globe Life contended that Defendant Chisholm may be precluded under Georgia law from receiving the Benefit if it is determined that he caused Ms. Thomas's death. (Id. at ¶ 19.) On July 28, 2020, this Court granted Globe Life's Motion to Deposit Funds into the Registry of the Court (Doc. 20), and thereafter, granted Globe Life's Motion for Discharge, dismissing it from the case (Doc. 24). Now, Defendant Chisholm has filed a motion for summary judgment arguing that there is no genuine dispute of material fact that O.C.G.A. § 33-25-13, the "slayer statute," is

---

[4] In Plaintiff Globe Life's Memorandum in Opposition to Motion to Dismiss and in Support of Plaintiff's Cross-Motion to Deposit Funds filed on October 9, 2019, Globe Life asserted, without citation to the record, that "[a]s recently as last month, counsel for Globe Life was advised by the Savannah police department that the investigation remains open and that Mr. Chisholm has not been ruled out as a suspect." (Doc. 17 at 2 n.1.)

4

inapplicable and that he is entitled to receive the Benefit of the Policy.[5] (Doc. 31, Attach. 2 at 5.)

## STANDARD OF REVIEW

According to Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Such a motion must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law governing the action determines whether a fact is material. DeLong Equip. Co. v. Wash. Mills Abrasive Co., 887 F.2d 1499, 1505 (11th Cir. 1989) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986)). In making this determination, the Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 994, 8 L. Ed. 2d 176 (1962)).

---

[5] The Court notes that Defendant Chisholm's Brief in Support of his Motion for Summary Judgment is missing "Page 2 of 5" and contains two copies of "Page 4 of 5." (Doc. 31, Attach. 2.) Since the missing page only contains the background facts and Defendant Chisholm filed a statement of material facts, the Court will nevertheless rule on the merits of Defendant Chisholm's motion.

5

As the Supreme Court explained:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986) (internal quotation marks omitted). The burden then shifts to the nonmoving party to establish, by going beyond the pleadings, that there is a genuine issue concerning facts material to its case. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586, 106 S. Ct. at 1356 (citations omitted). Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989) (citing Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988)).

Even though a party fails to respond to a motion for summary judgment, summary judgment may only be granted when appropriate. United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla., 363 F.3d 1099, 1101 (11th Cir. 2004). To this end, a district court "must ensure that the motion itself is

6

supported by evidentiary materials." Id. Thus, while a district court need not consider all the evidentiary materials on file, it must consider "the evidentiary materials submitted in support of the motion for summary judgment[]" and "indicate that the merits of the motion were addressed." Id. at 1101-02 (citations omitted).

## ANALYSIS

O.C.G.A. § 33-25-13, Georgia's "slayer statute," provides:

> No person who commits murder or voluntary manslaughter or who conspires with another to commit murder shall receive any benefits from any insurance policy on the life of the deceased, even though the person so killing or conspiring be named beneficiary in the insurance policy. A plea of guilty or a judicial finding of guilt not reversed or otherwise set aside as to any of such crimes shall be prima-facie evidence of guilt in determining rights under this Code section. All right, interest, estate, and proceeds in such an insurance policy shall go to the other heirs of the deceased who may be entitled thereto by the laws of descent and distribution of this state, unless secondary beneficiaries be named in the policy, in which event such secondary beneficiaries shall take.

A criminal conviction of murder or voluntary manslaughter may serve as evidence of guilt if the individual has exhausted the right to directly appeal or the time to appeal has expired. Transamerica Life Ins. Co. v. Bell, No. 1:19-CV-1552-MHC, 2020 WL 1800723, at *4 (N.D. Ga. Feb. 3, 2020) (citing Slakman v. Cont'l Cas. Co., 277 Ga. 189, 190, 587 S.E.2d 24, 27 (2003)). A criminal conviction, however, is not always necessary to bar recovery. "[A]n individual may be barred from receiving the benefits of a life insurance policy . . . if it is determined under the appropriate standard of

7

proof that the individual committed murder or voluntary manslaughter or conspired to commit murder." State Farm Life Ins. Co. v. Leili, No. 1:12-CV-2376-ODE, 2013 WL 12062266, at *3 (N.D. Ga. Dec. 3, 2013) (quoting Slakman, 277 Ga. at 190, 587 S.E.2d at 26). Thus, "the slayer statute is itself a vehicle by which to prove that a beneficiary committed murder or voluntary manslaughter and . . . [is] precluded from receiving the policy proceeds." Id. (quoting Taraszka v. Graziosi, No. 3:11-CV-80-CAR, 2013 WL 1680640, at *6 (M.D. Ga. Apr. 17, 2013)). "To defeat summary judgment then," Defendant Jenkins was required to "show 'any competent evidence to create a genuine issue of fact as to whether [Defendant Chisholm] committed murder or voluntary manslaughter.' " Taraszka, 2013 WL 1680640, at *6 (citations omitted).

A federal court in Georgia found summary judgment inappropriate in a case where the policy beneficiary was named a suspect in the policy holder's death. In Mitchell v. Globe Life & Accident Insurance Co., the Northern District of Georgia declined to find beneficiary John Mitchell was entitled to the proceeds of Sherry Crowe's accidental death insurance policy as a matter of law because he was named a suspect in the investigation into her death and the slayer statute may have precluded him from recovering. 548 F. Supp. 2d 1385, 1388, 1397 (N.D. Ga. 2007). Crowe's remains were discovered in the aftermath of a vehicle fire,

8

and questions concerning the cause of the accident and Crowe's death were never fully resolved. Id. at 1388-89. While no physical evidence linked Mitchell to Crowe's death, the results of his polygraph examination revealed "significant deception" concerning Crowe's death. Id. at 1390. As a result, the Court concluded it was unclear whether the slayer statute would preclude Mitchell's recovery under the insurance and denied summary judgment. Id. at 1397.

On the other hand, federal district courts in Georgia have also commented on the lack of case law interpreting Georgia's slayer statute. Leili, 2013 WL 12062266, at *4. In fact, case law interpreting similarly situated unopposed motions for summary judgment is sparse. In Prudential Insurance Co. of America v. Blanton, however, the Northern District of Ohio encountered a similar issue.[6] 118 F. Supp. 3d 980 (N.D. Ohio 2015). In that case, Prudential Insurance Company of America filed an interpleader action because it was unsure whether to distribute the proceeds of Catherine Sackrider's life insurance policy to Lisa Blanton, Sackrider's daughter, after Blanton was named a person of interest

---

[6] Although not identical to Georgia's slayer statute, Ohio's slayer statute also precludes any individual convicted of murder or voluntary manslaughter from benefiting from the death, and courts in that state have concluded that civil proceedings are a method to prevent wrongdoers from receiving proceeds of life insurance policies. Prudential Ins. Co. of Am. v. Blanton, 118 F. Supp. 3d 980, 982-83 (N.D. Ohio 2015).

9

in her mother's homicide. Id. at 982. The parties consented to Prudential depositing the funds with the court's registry, and Blanton moved for summary judgment. Id. at 981-82. Michael Baranek, Sackrider's brother, claimed he was entitled to the funds and opposed Blanton's motion. Id. at 982. Relying on the affidavit of a detective classifying Blanton as a person of interest, Baranek argued a factual dispute existed as to whether Blanton caused her mother's death. Id. at 983. Despite Blanton's status as a person of interest, the detective's affidavit failed to explain how he reached that conclusion or any factual basis from which a jury could infer Blanton's criminal responsibility. Id. Thus, the court concluded Baranek "failed to present any evidence that would enable a reasonable jury to find" Blanton was criminally responsible for her mother's death. Id. Ultimately, the Court explained, "[w]hile such official designation may raise some suspicion, suspicion is not proof." Id.

Here, Defendant Chisholm argues that he could not have been responsible for Ms. Thomas's death because he was in Glenville, Georgia, at the time of her death. (Doc. 31, Attach. 2 at 4-5.) The undisputed evidence on the record is that Mr. Green collected Defendant Chisholm from his home on March 4, 2017, and at the time of their departure, Ms. Thomas was alive.[7] (Doc. 31, Attach. 1 at

---

[7] The Court makes no finding regarding whether Defendant Chisholm's allegations would bear out to be credible if this case were to

¶¶ 4, 6.) Defendant Chisholm then travelled to Glennville, Georgia, with Mr. Green, and he stayed at the home of Mr. Johnson in Glennville, Georgia, the night of March 4, 2017, until the morning of March 5, 2017. (Id. at ¶¶ 5, 7, 8.) Mr. Green then drove Defendant Chisholm home where Defendant Chisholm found Ms. Thomas unresponsive. (Id. at ¶¶ 8, 10.)

Similar to Blanton, the record in this case is devoid of any explanation as to how Detective Burdette determined Defendant Chisholm was a suspect or any factual basis describing how Defendant Chisholm may be criminally responsible for Ms. Thomas's death. 118 F. Supp. 3d at 983. Moreover, unlike Mitchell where the Northern District of Georgia concluded the slayer statute might bar recovery because the beneficiary was a suspect, 548 F. Supp. 2d at 1397, Defendant Chisholm's motion is unopposed, and the record lacks evidence beyond Defendant Chisholm's status as a suspect to justify denying summary judgment.[8] Based on the evidence in the record, undisputed by Defendant Jenkins, the Court concludes there is insufficient evidence to create a genuine issue of material fact that Defendant Chisholm committed voluntary manslaughter or murder or conspired to do so. As a result,

---

proceed. They are, however, the undisputed facts before the Court on this motion.
[8] Furthermore, there is no evidence that Defendant Chisholm is still an active suspect in the investigation into Ms. Thomas's death.

11

Defendant Chisholm is entitled to summary judgment with respect to his claim that the slayer statute does not preclude him from receiving the Benefit of the Policy.

**CONCLUSION**

For the foregoing reasons, Defendant Chisholm's Motion for Summary Judgment (Doc. 31) is **GRANTED**. Since Defendant Chisholm made no request regarding the disbursement of funds in his motion for summary judgment, it shall be the responsibility of Defendant Chisholm to file an appropriate motion to disburse the funds from the Court registry within **fourteen (14) days** of the date of this order.[9]

SO ORDERED this 14th day of December 2021.

_____
WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[9] The Court reminds Defendant Chisholm that pursuant to Southern District of Georgia Local Rule 67.3, the Clerk of Court will deduct a fee from the income earned on the deposit equal to ten (10) percent of the income earned.